UNITED STATES of America, Plaintiff-Appellee,

v.

DIX FORK COAL CO., et al., Defendants-Appellants.

No. 81–5125.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 25, 1982.

Decided Nov. 9, 1982.

Forrest Cook, J.L. Roark, Whitesburg, Ky., David E. Arvin, Hopkinsville, Ky., for defendants-appellants.

Louis DeFalaise, U.S. Atty., Jane E. Graham, Asst. U.S. Atty., Lexington, Ky., Courtney Shea, Atty./Advisor, Dept. of Interior, Office of the Field Sol., Knoxville, Tenn., for plaintiff-appellee.

Before LIVELY and KRUPANSKY, Circuit Judges, and BROWN, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Dix Fork Coal Company (Dix Fork), during the course of a mining operation, created an imminent and hazardous danger to the health or safety of the public as defined in regulations promulgated pursuant to the Surface Mining Control and Reclamation Act of 1977 (Act), 30 U.S.C. § 1201 et seq. The Secretary of the Interior (Secretary), charged with enforcement and implementation of the Act through the Office of Surface Mining (OSM), issued to Dix Fork a Cessation Order (CO) and Notice of Violation (NOV) for failure to provide adequate drainage for all access and haul roads and failure to surface access and haul roads with a durable material. These violations caused water and shale to be directed below the access road thereby aggravating existing land slides located above a public road and residential dwelling. Dix Fork ceased mining operations but failed to perform the remedial affirmative obligations ordered by the Secretary whereupon the latter, through the Attorney General, initiated an action in district court seeking compliance. 30 U.S.C. § 1271(c). The district court ordered Dix Fork and its corporate agent, Wilford Niece, to provide drainage channels to divert surface run-off around land slides, remove or otherwise stabilize the material which was contributing to movement of the lower land slide, provide adequate drainage for the access road and remove toxic material from the access road and surface the road with a durable material. This appeal ensued.

■ It is initially incumbent upon this Court to ascertain federal jurisdiction and applicability of the Act to the mine site in issue. The provisions of the Surface Mining Control and Reclamation Act of 1977 are inapplicable to commercial extractions "where the surface mining operation affects two acres or less." 30 U.S.C. § 1278(2). The Surface Disturbance Mining Permit issued to Dix Fork by the Commonwealth of Kentucky authorized the disturbance of 1.84 acres in Knott County, Kentucky. While Dix Fork implores this Court to construe the acreage incorporated in the state mining permit as a benchmark of threshold federal jurisdiction, such a practice, however objective, would clearly negate the import of the statutory language which provides that the Act is applicable to all "surface mining operations[s]" which *"affect"* an area in excess of two acres. The only pertinent jurisdictional inquiry is the acreage which was actually affected by the mining operation rather than the acreage which was authorized to be affected. The district court concluded, subsequent to an evidentiary hearing, that Dix Fork had affected an area of 2.89 acres. A thorough review of the record fails to leave this Court "with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *United States v. Jabara,* 644 F.2d 574 (6th Cir. 1981); *Louisville & Nashville Railroad Company v. C.I.R.,* 641 F.2d 435, 438 (6th Cir. 1981); *Johnson v. United States,* 600 F.2d 1218 (6th Cir. 1979); Rule 52(a), Fed.R.Civ.P.

■ The district court's failure to abstain or hold its proceedings in abeyance until a resolution issued in contemporaneous state proceedings before the Kentucky Department of Natural Resources involving the same mine and many of the same issues is asserted on appeal as error. The issue of abstention, not having been presented to the trial court, cannot be raised for the first time on appeal. *Union Planters National*

*Bank of Memphis v. Commercial Credit Business Loans, Inc.,* 651 F.2d 1174, 1187 (6th Cir.), *cert. denied,* 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981); *Wolfel v. Sanborn,* 666 F.2d 1005, 1007 (6th Cir. 1981). While "[t]here may ... be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below", *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), the action *sub judice* fails to prompt this Court to depart from the general rule.

The pertinent issue on appeal joins the authority of a district court to impose affirmative remedial obligations upon a permittee's agent as predicated upon 30 U.S.C. § 1271(c) which pertinently provides:

> (c) The Secretary may request the Attorney General to institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other *appropriate* order in the district court ... whenever such permittee *or his agent* (A) violates or fails or refuses to comply with any order or decision issued by the Secretary under this chapter ... (emphasis added).

Accordingly, § 1271(c) authorizes the district court to issue an "appropriate" order against both a permittee and its "agent". In the action *sub judice* Wilford Niece, the father of Ricky Niece who was president and 52% shareholder of Dix Fork, was ordered, in conjunction with Dix Fork, to perform the aforementioned remedial obligations resulting from his contributory role as Dix Fork's "agent". The relationship between Wilford Niece and Dix Fork is evidenced in the district court's following finding of fact which is supported by the record and unchallenged by the parties:

21. Although Wilford Niece is not an officer or stockholder of Dix Fork, he is a spokesman for and advisor to the corporation. Furthermore, he is the operator of Niece Mining Co., which owned the equipment that was used at this particular site and which moved the dirt for Dix Fork to get ready for the deep mine. He is also the guarantor on a bank promissory note for Dix Fork. His financial arrangement with Dix Fork was for him to receive the coal that was "faced up" in return for the use of his equipment.

The record discloses that Ricky Niece, Dix Fork's president and majority shareholder, delegated to Wilford Niece the responsibility of acting as Dix Fork's spokesman to OSM and as advisor to Dix Fork in all matters concerning compliance with the Act. Wilford Niece voluntarily accepted and executed the permittee's delegation of responsibility ensuring compliance with the Act throughout the mining operation by Dix Fork.

Confronting the threshold issue of whether an agency relationship existed between the permittee Dix Fork and Wilford Niece so as to expose the latter to the liability of an "appropriate" order under the authority granted in § 1271(c), guidance is supplied by neither the Act nor regulations promulgated thereunder in defining the term "agent". The parties on appeal have each supplied common-law definitions of the term "agent" with different criteria and supportive of their respective positions in this action.[1] These definitions are rejected as not probative and incongruent with the statutory framework underlying this action.

In undertaking the amorphous task of defining the term "agent" as intended by § 1271(c), it is perhaps instructive to

---

1. Wilford Niece advances the following characteristics as the hallmark of an agency relationship: the agent must be empowered to alter the legal relationship between the principal and third persons; the agent must act as a fiduciary; and the agent must be subject to control by his principal with respect to matters entrusted to him. Contrawise, the United States posits that agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by another so to act, and one who acts for, or in the place of, another by authority from him, or who undertakes to transact some business or manage some affair for him by authority from him, and to render an account of what he has done.

"transplant" a definition from a parallel statutory framework embodying a similar policy, purpose and structure. The utility of such a transplant has been recognized in *York v. Tennessee Crushed Stone Association,* 684 F.2d 360, (6th Cir. 1982) wherein case law interpreting the term "agent" as used in Title VII, 42 U.S.C. § 2000e *et seq.,* was applied in an action predicated upon the parallel Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Therein it was observed that "an agent of an employer who may be sued as an employer in Title VII suits has been construed to be a supervisory or managerial employee to whom employment decisions have been delegated by the employer." *Id.* at 362. *Mary York* counsels that in the absence of contrary legislative intent an overly restrictive common-law definition of agent which would subvert the purpose of the statutory framework in which it is employed is to be avoided.

The most probative definition of "agent" appears in the Coal Mines Health and Safety Act, 30 U.S.C. § 801 *et seq.,* which was enacted to promote the health and safety of coal miners, and which, accordingly, parallels in purpose, policy and structure the instant Act which was enacted to protect the environment and public from surface mining operations. *Compare* 30 U.S.C. § 801 *with* 30 U.S.C. §§ 1201, 1202. The Coal Mines Health and Safety Act provides the following definition:

> (e) "agent" means any person charged with responsibility for the operation of all or a part of a coal mine or the supervision of the miners in a coal mine.

30 U.S.C. § 802(e). Utilization in the action *sub judice* of a parallel definition of § 802(e) agent is particularly attractive since the relief which the Secretary may seek in district court under the Coal Mines Health and Safety Act against an "operator *or his agent*" is pragmatically identical to that relief which is available under § 1271(c) of the instant Act. *Compare* 30 U.S.C. 818 *with* 30 U.S.C. § 1271(c). The agent subjected to liability under the Coal Mines Health and Safety Act is the person "charged with responsibility" for the operation which potentially may violate the purposes and policy of the legislative framework. Applying this definition by analogy, it is evident that a § 1271(c) "agent" includes that person charged with the responsibility for protecting society and the environment from the adverse effects of the surface coal mining operation and particularly charged with effectuating compliance with environmental performance standards during the course of a permittee's mining operation. As aforenoted, Wilford Niece had been delegated and had assumed and executed exactly this responsibility. Having charted Dix Fork's environmental course, Wilford Niece is precluded under the facts and circumstances of this case from avoiding agency liability under § 1271(c) now that Dix Fork has violated the Act.

Wilford Niece, as a § 1271(c) agent, is subject to any "appropriate" district court order. In confronting the issue of whether the affirmative obligations imposed upon Niece are "appropriate", this Court notes the existence of a quasi-symbiotic relationship between Niece and Dix Fork and the substantial culpability of Niece as a contributor to and creator of the imminent and hazardous danger to the health and safety of the public. James Begley (Begley), OSM inspector and reclamation specialist, testified that on May 9, 1979, he visited the mine site at the request of Niece who was desirous of ascertaining what could be done "to stay out of trouble." Niece specifically inquired whether shale material could be placed on the access road and was advised in the negative since shale was non-durable, toxic and violative of environmental regulations. Begley re-inspected the mine on May 18, 1979, and discussed silt control with Niece. Sometime after May 9, 1979, and before June 1, 1979, Dix Fork placed from one to six feet of shale on the access road in an effort to fortify it. Approximately 55–60% of this non-durable shale eventually disintegrated into smaller pieces and shifted off the access road and onto the slide below. Surface drainage from the access road, was directed

onto the lower slide. The combined forces of weight and water created the environmental hazard. Simply, Wilford Niece, having assumed the delegated responsibility of structuring Dix Fork's mining operation so as to comply with the Act, engaged in and/or advised the engagement of activities violative of the Secretary's regulations. The equipment utilized by Dix Fork in creating the environmental hazard was owned by Niece Mining Company, a corporation owned by Wilford Niece. The assets of Wilford Niece in conjunction with his failure to fulfill his delegated environmental responsibilities directly created the imminent danger. The intervening corporate structure of Dix Fork is insufficient, given the aggravating circumstances of this case, to shield Wilford Niece from the affirmative obligations necessary to rectify the very environmental hazard which would not have manifested but for the asserts and decisions of Wilford Niece. Liability of Niece is particularly appropriate since Dix Fork possesses no assets or equipment thereby rendering the assets of Niece necessary to effectuate compliance with the Secretary's order and alleviate an *imminent* danger. Refusal of the federal forum to implement affirmative obligations on Niece as an agent would permit circumvention of the Act, through the establishment of a sham corporation. It appears that this is precisely the type of situation which Congress attempted to foreclose through enactment of the broad relief available to the federal forum under § 1271(c).[2]

Last, this Court adjudges specious Niece's assertion that the Secretary must expressly name the contributory agent in the NOV and CO and thereby provide an opportunity for administrative review prior to the commencement of seeking § 1271(c) redress. Although OSM labored under the facial but false appearance and assumption that Niece *was* the actual owner of Dix Fork and therefore did not name Niece in the NOV or CO, Niece was pragmatically

provided as much notice as was Dix Fork of the violations and attending affirmative obligations: he was present at all proceedings as spokesman for Dix Fork and manifested indicia of actual ownership. Further, Niece as spokesman for and advisor to Dix Fork, failed to avail the corporation of the administrative review process. The Secretary is charged with implementation and enforcement of the Act. 30 U.S.C. § 1211. Whether the Secretary implements the Act through issuing orders and conducting administrative review as provided in the Act prior to initiating a § 1271(c) action, or implements the Act through issuing orders and then seeking judicial enforcement of the same as permitted in § 1271(c) is irrelevant; in both instances the Secretary implements the Act and the violating entity is afforded due process prior to the judicial imposition of affirmative obligations.

In accordance with the foregoing, the judgment of the district court is hereby AFFIRMED.

---

**2.** Having ascertained that the statutory framework and authority of § 1271(c) provides a sufficient basis to expose Wilford Niece to affirmative remedial obligations, it is unnecessary to address those alternative potential theories of relief such as construing Dix Fork and Niece as (1) joint tortfeasors or (2) joint venturers.