F. Ray PAYNE, Eastern Kentucky Homes, Inc. and Jimmy Payne, Appellants,

v.

COMMONWEALTH of Kentucky, NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION CABINET, Appellee.

No. 86–CA–2972–MR.

Court of Appeals of Kentucky.

March 4, 1988.

Donald Duff, Frankfort, for appellants.

Charles W. Kurtz, Natural Resources and Environmental Protection Cabinet, Of-

fice of General Counsel, Frankfort, for appellee.

Before CLAYTON, COOPER and LESTER, JJ.

COOPER, Judge.

The appellants, F. Ray Payne, Eastern Kentucky Homes, Inc., and Jimmy Payne, appeal from an order of the circuit court permanently enjoining them to take action to reclaim property and abate inherent danger to persons, property and the environment. On appeal, the issues are: 1) whether the relevant surface mining statutes authorize mandatory injunctions to compel an operator to reclaim mined property; 2) whether the Cabinet for Natural Resources and Environmental Protection [hereinafter "Cabinet"] had the authority to enforce reclamation; 3) whether the motion for a mandatory injunction was properly and timely presented to the circuit court; 4) whether the Cabinet had an adequate remedy at law so as to preclude equitable relief; and 5) whether the permanent mandatory injunction is void for vagueness. After a thorough review of the record, we affirm.

Appellants assert that they were removing coal incident to constructing a subdivision in Johnson County in 1980–81 when they were cited on April 20, 1981 for mining without a permit, a violation of 405 KAR 1:020. A restraining order was issued August 12, 1981 and a temporary injunction October 9, 1981. The Cabinet filed an administrative complaint October 20, 1981, charging appellants with failing to obtain a mining permit and failing to take various reclamation measures. After a hearing, the then Secretary of the Cabinet issued an order on October 1, 1982, directing the appellants to pay certain civil penalties for mining without a permit in violation of KRS 350.060, and directing them to reclaim the land as well as submit a plan within sixty days of the order to the Cabinet for such reclamation. The appellants appealed to the Franklin Circuit Court and the Cabinet's order was affirmed in all respects on July 6, 1983. That final order and judgment of the circuit court made note of the fact that the administrative order required reclamation. Appellants failed to perfect an appeal from that judgment.

Sometime thereafter, the Cabinet sought to have the order and judgment enforced. As a result, garnishment proceedings were begun to collect the civil penalties. An agreed order was entered into on September 20, 1985, stipulating that appellant F. Ray Payne would reclaim the mine site and submit design plans to the Cabinet for reclamation pursuant to a contract with an engineering contractor. Dates for compliance were part of the agreed order.

Additionally, the order provided that appellant's deliberate failure to stabilize or reclaim the land in accordance with the order would be grounds for the Cabinet to proceed with an action to enforce the reclamation requirements.

Pursuant to a motion and after a hearing on the matter, an order of the circuit court was entered on December 11, 1985, declaring that F. Ray Payne had failed to comply with the agreed order and that such order was set aside. The order and judgment of July 6, 1983 was reinstated in full. It was not until April 1986 that the civil penalties were paid and only after a writ of execution and order of garnishment were issued.

In May of 1986 the Cabinet returned to circuit court seeking a mandatory injunction ordering the appellants to obey the order of July 6, 1983. In that motion, the Cabinet asked that the appellants be ordered to reclaim the site or that the court hold a hearing and assess costs of reclamation against them. In an order entered August 7, 1986, the circuit court declined to issue a permanent mandatory injunction, citing the fact that the site was presently being monitored by the federal Office of Surface Mining. The Cabinet again petitioned the circuit court on October 8, 1986 for an order enforcing the judgment of July 6, 1983, as well as an order forcing the appellants to reclaim the site. Before a hearing on the motion could be held, heavy rains caused mud and debris from the outslope to move onto the subdivision property forcing evacuation of a house. The circuit court then issued a temporary injunction

ordering F. Ray Payne to prevent further damage to the homeowner's property and the environment, and to immediately move the mudslide and repair the damage. On November 20, 1986, the court permanently enjoined appellants "from failing to take ... any and all action necessary to reclaim the property and abate the inherent danger to persons, property and the environment." It is from this order that appellants now appeal.

The circuitous route through the administrative, state and federal court systems described herein exemplifies the dilatory tactics of the appellants throughout this proceeding. Appellants' main contention is that there is no statutory basis for a mandatory injunction compelling reclamation. They concede that civil penalties and prohibitory injunctions to prevent further violation of statutes are authorized. KRS 350.990. And they also agree that the Cabinet could have the land reclaimed and assess the costs against them. Nevertheless, they argue that there is no authority to compel them to take remedial measures and reclaim the land themselves. We disagree. The appellants take too narrow a view of the statutes and administrative regulations.

■ KRS 350.465(3)(d) states that the Cabinet shall have the power and duty to order cessation of mining activities and "impose affirmative abatement obligations." The section of the statute setting forth penalties also speaks of the *duties* imposed by the statute. KRS 350.990. Furthermore, when Kentucky accepted primacy on May 18, 1982, KRS 350.025 (comment), it agreed that any civil or criminal penalty in the state program would be no less stringent than the provisions of the federal program. 30 U.S.C. § 1268(i). *See also* Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201–1328 (1979 & Supp.1987) (effective Aug. 3, 1977). The latter provides that to the extent that any state law is inconsistent with the provisions of the federal act, the federal act supersedes it. 30 U.S.C. § 1255(a); KRS 350.025. The federal act, like the state act, authorized the Secretary of the Interior not

only to order the cessation of mining and reclamation operations, but also to "impose affirmative obligations on the operator requiring him to take whatever steps the Secretary deems necessary to abate the imminent danger or the significant environmental harm." 30 U.S.C. § 1271(a)(2). Therefore, we believe the correct interpretation of the applicable statutes and regulations allows an operator to be compelled to undertake reclamation.

In *United States v. Dix Fork Coal Co.*, 692 F.2d 436 (6th Cir.1982), the court held that imposing affirmative remedial obligations is appropriate and authorized by statute. *Id.* at 439. While the *Dix* case turned on the question of who is an agent, the court used the language "any other appropriate order" from 30 U.S.C. § 1271(c) to impose an affirmative obligation to take remedial measures to provide drainage channels, remove or stabilize slide material, provide drainage for an access road, remove toxic materials from the road, and surface the road. This is a clear case of compelling reclamation or remedial measures. That reasoning applies to the case *sub judice.*

■ We also determine that the Cabinet has the authority to enforce reclamation and that there is no violation of separation of powers thereby. Ky. Const. §§ 27, 28. In KRS 350.020 and 350.028(5), the legislature empowered the Cabinet to adopt rules and regulations to administer and enforce the state's implementation of the federal act. KRS 350.050(1) directs the Cabinet to enforce the Chapter (Ch. 350) and "all rules and regulations and orders promulgated thereunder." Furthermore, KRS 350.028(3) gives the Cabinet the authority to "issue ... show cause orders requiring an operator to adopt such remedial measures as are necessary to comply with this chapter...." Built into several other statutes is the affirmative duty to take steps to minimize and correct environmental damage. *See* KRS 350.090(1), .093(1), .405, .410, .435. The regulations providing such affirmative duty are too numerous to delineate. For appellants to argue that the legislature did not give such powers of enforcement to

the Cabinet is untenable. We construe the statutes to authorize a mandatory injunction to reclaim land.

■ We also conclude that the motion for injunction was properly and timely presented. Appellants are mistaken when they state in their brief that the Cabinet never sought the injunction it now seeks, and that such relief was not afforded in the judgment of July 6, 1983. In that earlier action, the Cabinet sought to have the Secretary's order of October 1, 1982 upheld. And that order included affirmative remedial measures. The circuit court's judgment noted that, in addition to the assessment of civil penalties, reclamation had been ordered. That judgment, denominated final, affirmed in every respect the Cabinet's order. Therefore, it is immaterial that the Cabinet did not do this by way of a counterclaim. Contrary to appellants' assertions, the Cabinet never sought to amend the 1983 judgment.

■ Next, appellants assert that there was an adequate remedy at law in the form of civil penalties. We disagree. Civil penalties for mining without a permit were first assessed against the appellants on October 1, 1982. This was satisfied on April 3, 1986 only after a writ of execution and an order for garnishment were issued. Furthermore, the possibility of a company's filing bankruptcy or going out of business, rather than paying the costs of reclamation to a third party, is very strong. As such, equitable relief was entirely appropriate. The fact that the property of private citizens might incidentally be benefitted from the successful prosecution of this action does not mean that the Cabinet should not attempt to enforce the provisions of the Chapter. Moreover, there was testimony that a creek running into the Levisa Fork of the Big Sandy River was being polluted by runoff from the site, thus causing harm to the environment at large. The circuit court ruled that there was no adequate remedy at law and this is not clearly erroneous.

■ Last, we determine that the permanent mandatory injunction is not void for vagueness. While the order of November 20, 1986 may not contain the specifics necessary to apprise appellants of the action to be taken, the agreed order of September 20, 1985, signed by the parties, set out the initial steps to be taken to obtain Cabinet approval of a reclamation plan. *See White v. Sullivan*, Ky.App., 667 S.W.2d 385 (1983). Furthermore, the regulations themselves outline steps to be taken to reclaim the land. *See* 405 KAR 8:030 §§ 24–38 and 405 KAR Ch. 16. The burden is on the operator to submit mining and reclamation plans to the Cabinet at the time the mining permit is applied for. KRS 350.090. This statute provides for approval or disapproval of the plans by the Cabinet and reasons for the rejection of the plan. The Cabinet may also propose modifications to the reclamation plan. It is not the Cabinet's function to design individualized reclamation plans for each proposed site. That onus is on the operator. Appellants' assertion at oral argument that they are willing to reclaim but fear their efforts may not be acceptable to the Cabinet is not well-taken.

This case has been punctuated by dilatoriness and foot-dragging for six and one-half years. The appellants seek to shirk their legal duties not only to prevent harm to the environment but to repair that which they have done. This appeal is really an attack on the judgment of July 6, 1983, from which no appeal was ever taken. Appellants have once again lost on the merits.

The order of the Franklin Circuit Court permanently enjoining appellants from failing to reclaim is affirmed.

All concur.