**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Bruce Y. PEERY, Defendant–Appellant.**

**No. 87–6296.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 27, 1988.

Decided Oct. 28, 1988.

**Roy PENNY, et al., Plaintiffs–Appellees,**

**v.**

**Thomas KENNEDY, Commissioner of Fire and Police of the City of Chattanooga, Tennessee, et al., Defendants–Appellants.**

**No. 86–6280.**

United States Court of Appeals, Sixth Circuit.

Aug. 3, 1988.

ORDER

William M. Barrick, argued, Bruce and Barrick, Nashville, Tenn., for defendant-appellant.

B. Catherine Freels, U.S. Dept. of Interior, Sp. Asst., Knoxville, Tenn., Edward J. Shawaker, argued, Land & Natural Resources Div., Dept. of Justice, Washington, D.C., for U.S.

Before WELLFORD and NELSON, Circuit Judges, and McQUADE, District Judge.[*]

PER CURIAM.

The United States brought suit against Resource Processors, Inc., and Bruce Peery under the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201 *et seq.* Resource Processors had been issued a permit by the State of Tennessee to conduct surface coal mining on a 35–acre tract of land. Federal inspectors subsequently issued notices of violation and cessation orders to Resource Processors for violations of the Reclamation Act. The violations were not remedied, and the United States sought an injunction requiring Resource Processors and Mr. Peery, as Resource Processors' agent, to reclaim the land as required by the notices of violation and cessation orders. The United States filed a motion for summary judgment, which the district court held in abeyance pending an evidentiary hearing. Following that hearing the court granted the summary judgment motion and entered an injunction requiring the reclamation of the land. Mr. Peery appeals. For the reasons that follow, we shall affirm the district court's judgment.

Resource Processors was incorporated in April of 1977 by one Glen Waters. Mr. Perry became president of the corporation a month later and obtained a reclamation bond that was necessary for issuance of a state mining permit. It was originally planned that Mr. Peery would be the site foreman in charge of day-to-day operations of the mine, while Mr. Waters would handle the paperwork, arrange coal sales, and provide necessary equipment. Mining operations began under this plan in May of 1977, but ceased soon thereafter because the corporation's equipment was continuously in disrepair. In September of 1977 Mr. Peery left the site and returned to his home 155 miles away.

Sometime later Mr. Waters arranged to lease the land for mining by third parties. He prepared leases that were signed by Mr. Peery as president of Resource Processors. Mining operations recommenced, conducted by lessees and subcontractors without Mr. Peery's supervision. On May 1, 1978, prior to expiration of the original state mining permit, the corporation filed an application under the federal government's recently enacted Reclamation Act. Mr. Peery signed the application as president of Resource Processors and acknowledged that he had read the surface mining regulations pertaining to reclamation and agreed to comply with them. The lessees and subcontractors continued with their mining of the 35 acres covered by the permit and also mined some adjoining acreage. Although Mr. Waters maintained an office on the mining property, Mr. Peery remained in his home town and visited the site only four or five times.

In June of 1979 Resource Processors sought an extension of its mining permit. The application, which was signed by Mr. Peery, named him as the contact person at the site and as the person representing the corporation. Mr. Peery also signed a reclamation plan on behalf of Resource Processors. The extension was not granted, and the lessees abandoned the site without reclamation.

Open pits, high walls, ungraded spoil piles, and a lack of vegetation led both

[*] The Honorable Richard B. McQuade, Jr., United States District Court for the Northern District of Ohio, sitting by designation.

state and federal governments to initiate remedial proceedings. Mr. Peery took equipment to the site and supervised reclamation work until the corporation's money ran out. In November of 1979 he met with representatives of the federal Office of Surface Mining to discuss reclamation. Upon his representation that work would be recommenced, the due date for reclamation was extended to January 4, 1980. An inspection on that date showed that no significant reclamation had been accomplished, and a cessation order was issued. On January 9, 1980, Mr. Peery requested a hearing concerning the cessation order. The hearing was convened on January 22, 1980, but neither Mr. Peery nor any other representative of Resource Processors appeared. In 1981 the corporation's charter was revoked, and the deed to the minesite property was later transferred to a corporation owned by Mr. Peery's wife. On August 27, 1984, Mr. Peery executed a judgment debtor's affidavit identifying himself as the person who had usually made the decisions regarding the day-to-day conduct of corporate business. Subsequent notices of violation and cessation orders were issued through June 1986, and neither Mr. Peery nor Resource Processors did anything in response.

The United States brought the present enforcement action in 1987, with the results described above.

The Reclamation Act provides that the federal government may sue for appropriate relief "whenever [a] permittee or his agent ... violates or fails or refuses to comply with any order or decision issued by the Secretary under this chapter...." 30 U.S.C. § 1271(c). The act and the regulations promulgated under it do not define the term "agent," and this court has adopted the definition that appears in the Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 801 *et seq.* The purpose, policy, and structure of that Act parallel those of the Reclamation Act. *United States v. Dix Fork Coal Co.*, 692 F.2d 436, 439–40 (6th Cir.1982). The Mine Safety and Health Act defines "agent" as "any person charged with responsibility for the operation of all or a part of a coal or other

mine or the supervision of the miners in a coal or other mine." 30 U.S.C. § 802(e). Under this definition the *Dix Fork* court concluded that "a § 1271(c) 'agent' includes that person charged with the responsibility for protecting society and the environment from the adverse effects of the surface coal mining operation and particularly charged with effectuating compliance with environmental performance standards during the course of permittee's mining operation." *Dix Fork Coal Co.*, 692 F.2d at 440.

Viewed in the light most favorable to Mr. Peery, the evidence in the case at bar establishes without contradiction that Mr. Peery was the person charged with responsibility for compliance with the Reclamation Act. He signed all of the applications for mining permits and designated himself as the "person representing [the] company." He personally obtained the performance bond allowing the corporation to commence mining. He acknowledged that he had read the surface mining regulations pertaining to reclamation and agreed to comply with them. On June 25, 1979—after he had become aware of the violations committed by the lessees—he listed himself as "contact person at site" in applying for an extension of the corporation's mining permit. He also signed the reclamation plan submitted on behalf of the corporation. And it was he who met with government representatives and indicated an intent to begin reclamation.

Mr. Peery falls squarely within the definition of "agent" adopted by this court in *Dix Fork*. Accordingly, the judgment of the district court is AFFIRMED.