Bert COUCH, Appellant,

v.

NATURAL RESOURCES AND ENVI-
RONMENTAL PROTECTION
CABINET, Appellee.

No. 98–SC–322–DG.

Supreme Court of Kentucky.

Feb. 18, 1999.

As Amended Feb. 22, 1999.

Christopher M. Hill, Linda J. West, McBrayer, McGinnis, Leslie & Kirkland, Frankfort, KY, for appellant.

S. Bradford Smock, Office of General Counsel, Natural Resources and Environmental Protection Cabinet, Frankfort, KY, for appellee.

Before: GUDGEL, Chief Judge; BUCKINGHAM and KNOPF, Judges.

## OPINION OF THE COURT

Having considered the arguments of the parties and the opinion of the Court of Appeals, we conclude that the opinion of the Court of Appeals is sound and well-reasoned. We, therefore, affirm and adopt the opinion of the Court of Appeals in full and set it forth as follows:

"This is an appeal from a judgment entered by the Perry Circuit Court reversing a final order, issued by the secretary of appellant Natural Resources and Environmental Protection Cabinet (cabinet), assessing civil penalties against appellee Bert Couch for certain violations of KRS Chapter 350 relating to surface coal mining. On appeal, the cabinet contends that the court erred (1) by finding that the enforcement proceeding was barred by limitations, (2) by failing to find that Couch waived a certain contention as to the applicability of KRS 350.990(9), (3) by finding that the evidence was insufficient to establish that Couch was an agent of the corporate permittee, and (4) by finding that the evidence was insufficient to establish that Couch knowingly and willfully ordered, authorized, or carried out surface coal mining activities in violation of applicable law. We agree with all of the cabinet's contentions. Hence, we reverse and remand.

"This proceeding stems from a land disturbance which took place in Perry County in 1983, allegedly for the purpose of constructing a road to a family cemetery. The record shows that on their second attempt, Couch and one Bradley Woolum obtained approval but no financial assistance for the project from the Perry Fiscal Court. G & W Construction Company (G & W) then was incorporated in July 1983, and Woolum was designated as its president, director and shareholder. Although Woolum and Couch did not apply for or receive a surface mining permit, on July 25, 1983, they obtained a Mines and Minerals license which permitted them to sell coal from the site. Couch provided the start-up capital for G & W and paid its various bills as they came due. Apparently, he expected to be reimbursed for these expenditures out of the net proceeds derived from the sale of coal removed from the project site.

"The occurrence of certain subsequent events led the cabinet to assess proposed penalties against Couch and others, and a hearing eventually followed. These events are succinctly summarized in the hearing officer's report in pertinent part as follows:

5. On July 28, 1983, Officer Addison advised Woolum of the regulatory requirement of government financing and stated that the Department thought the subject disturbance was illegal. The following day, Officer Addison advised Woolum and Couch of the requirements pertaining to permitting and exemptions. Defendants were advised not to remove coal from the site.

6. On July 30, 1983, Officer Addison flew over the site and observed that coal had been uncovered and removed.

7. On August 1, 1983, Officer Addison learned from Pine Branch Coal Sales that on July 30, some 203.88 tons of coal had

been hauled and dumped on its coal yard from the Krypton site by G & W Construction Company. On August 4 an additional 182.82 tons of coal was hauled to Pine Branch Coal Company from the Krypton site.

8. On August 8, 1983, in an overflight Officer Addison observed a second pit uncovered and being removed.

9. On August 8, 1983, Notices of Noncompliance Nos. 080045 and 080044 and Cessation Order 080045 were issued to G & W Construction, Albert Engle, Albert Engle, Jr., Patricia Engle, Bradley Woolum, Bert Couch and Joe Hurt for the following violations of KRS 350 and the regulations promulgated pursuant thereto:

    a. Mining without a permit, in violation of 405 KAR 7:040;

    b. Failure to maintain adequate silt control, in violation of 405 KAR 16:090;

    c. Failure to salvage and store all available topsoil, in violation of 405 KAR 16:050;

    d. Improper spoil disposal, in violation of 405 KAR 16:130;

    e. Improper blasting, in violation of 405 KAR 16:020.

10. The Notices of Noncompliance and Cessation Order were delivered on site to Bradley Woolum and were mailed by certified mail to G & W, Bradley Woolum, Bert Couch, Albert Engle, Albert Engle, Jr., Patricia Engle and Joe Hurt at P.O. Box 12, Bonneyman, KY, the corporation's address.

11. In disregard of these notices and order to cease mining, defendants Woolum and Couch hauled coal from the site from dusk until the early morning hours of August 9, 1983. On August 9, Officer Addison observed a new pit of coal had been removed.

The hearing officer recommended that the secretary enter a final order finding that G & W violated KRS 350.060, that Woolum and Couch were G & W's officers or agents, and that Woolum and Couch were individually liable for willfully and knowingly authorizing, ordering, or carrying out G & W's violations. KRS 350.990(9). Subsequently, the secretary adopted the hearing officer's report and recommendations, and issued a final order imposing a $50,000 penalty against G & W, as well as a $50,000 joint and several penalty against Woolum and Combs.

"Couch appealed to the Perry Circuit Court and the order, insofar as it affected Couch, was vacated and set aside. The court found that insufficient evidence was adduced to establish either that Couch was G & W's agent, that Couch knowingly and willfully ordered, authorized, or carried out surface coal mining violations within the meaning of KRS 350.990(9), or that Couch was subject to penalties pursuant to KRS 350.990(9). This appeal followed.

■ "First, the cabinet contends that the court erred by finding that the administrative proceeding below was barred by the statute of limitations applicable to collection actions. The cabinet asserts that Couch waived any limitations defense to the proceeding by failing to raise it prior to filing his exceptions to the hearing officer's report. However, even if we assume that the limitations issue was not waived, we agree with the cabinet's contention that the court erred by finding that the proceeding is barred by limitations.

"KRS 413.120(3) requires a penalty or forfeiture action to be commenced "within five years after the cause of action accrued." KRS 350.028(4) empowers the cabinet "[t]o issue, after an opportunity for a hearing, a final order imposing civil penalties for violations of this chapter." However, 405 KAR 7:092 [1] plainly indicates that if an administrative hearing is conducted to review a proposed penalty assessment, any such penalty is not due and payable until thirty days after entry of the secretary's final order. Only at that point do penalties become "recoverable in an action brought in the name of the Commonwealth of Kentucky by the cabinet's Department of Law." KRS 350.990(1).

"Here, the cabinet's December 1983 request for a formal hearing was initiated ap-

---

**1.** This regulation specifically is made applicable to surface coal mining administrative proceedings which were pending when it became effective in 1992. *See* 405 KAR 7:092(1).

proximately four months after the underlying citations were issued. However, until such time as the secretary's final order assessing a penalty against Couch was entered in June 1995, no penalty was due and payable by Couch, and no cause of action accrued by which the penalty's collection could be pursued. *Cf. Natural Resources and Environmental Protection Cabinet v. Whitley Development Corp.*, Ky.App., 940 S.W.2d 904 (1997) (cause of action did not accrue until sureties were called upon to honor their obligations as sureties but refused to do so); *Lexington–Fayette Urban County Government v. Abney*, Ky.App., 748 S.W.2d 376 (1988) (for limitations purposes, government's claim for recovery of unpaid license fees accrued when fees became delinquent on the day following their due date). As any applicable limitations statute therefore did not begin to run until after the secretary's final order was entered in June 1995, it follows that the trial court erred by finding that the instant proceeding was barred by limitations.

■ "Next, the cabinet contends that the court erred by failing to find that Couch waived his contention that he was not liable as a corporate agent because G & W was not a corporate permittee. *See* KRS 350.990(9). We agree.

■ "KRS 350.032(2) states that whenever a party seeks judicial review of a final order of the cabinet, "[n]o objection to the order may be considered by the court unless it was urged before the cabinet or there were reasonable grounds for failure to do so." Here, until he filed his reply brief before the circuit court, Couch did not specifically raise any issue as to whether G & W was a corporate permittee. Moreover, contrary to the trial court's conclusion, the objection was not adequately preserved for review by Couch's general statement, in his exceptions to the hearing officer's report and recommendations, that the findings therein were contrary to "the law and to the facts, to KRS Chapter 350, and to the administrative regulations issued pursuant to KRS Chapter 350." *See Challinor v. Axton*, 246 Ky. 76, 54 S.W.2d 600 (1932). Further, we are not persuaded by Couch's argument that *Reis v. Campbell*

*County Board of Education*, Ky., 938 S.W.2d 880 (1996), compels us to reach a different conclusion. Finally, we note in any event that there is no merit to appellee's argument that because G & W never obtained a surface coal mining permit, it was not subject to statutory provisions pertaining to "permittees." Indeed, 405 KAR 8:001 § 1(77) specifically defines a permittee as "an operator or a person holding *or required by* KRS Chapter 350 or 405 KAR Chapters 7 through 24 to hold a permit to conduct surface coal mining and reclamation operations." (Emphasis added.)

"Next, the cabinet contends that the trial court erred by finding that the evidence was insufficient to establish that Couch was G & W's agent. We agree.

"KRS 350.990(9) specifically states that if a corporate permittee's agent "willfully and knowingly authorized, ordered, or carried out" a violation of KRS Chapter 350 or any administrative regulation issued pursuant thereto, that agent is subject to civil penalties, fines, and imprisonment. However, the word "agent" is not defined in KRS Chapter 350.

■ "As noted in *Wright v. Sullivan Payne Co.*, Ky., 839 S.W.2d 250, 253 (1992), the existence of an agency relationship "is a legal conclusion to be reached only after analyzing relevant facts," and the burden of proof is on the party who alleges agency. The existence of an agency relationship may be established circumstantially, including by evidence of a party's continuous course of conduct regarding multiple successive transactions. *Mill Street Church of Christ v. Hogan*, Ky.App., 785 S.W.2d 263 (1990). Generally, the issue of whether the principal has a right to control the agent is critical to the determination of whether an agency relationship exists. *See Reis, supra.*

"However, the Sixth Circuit Court of Appeals has rejected narrow common law definitions of the term "agent" for purposes of the federal Surface Mining Control and Reclamation Act (SMCRA), which is the act that establishes the regulatory programs which are administered and enforced in Kentucky through the cabinet pursuant to KRS Chap-

ter 350. *See* 30 U.S.C. § 1201 *et seq.;* KRS 350.025; KRS 350.028(5). Indeed, in *United States v. Dix Fork Coal Co.,* 692 F.2d 436 (6th Cir.1982), the court addressed the fact that federal laws and regulations fail to define the term "agent" for purposes of 30 U.S.C. § 1271(c), which permits liability to be imposed against a "permittee or his agent" for violations of the SMCRA. The court rejected common law definitions of "agent," including those which are dependent upon an agent's control by a principal, as "not probative and incongruent with the statutory framework underlying this action." *Id.* at 439. Instead, the court looked to the Coal Mines Health and Safety Act, which defines "agent" as "any person charged with responsibility for the operation of all or a part of a coal mine or the supervision of the miners in a coal mine." *See* 30 U.S.C. § 802(e). Applying that definition by analogy, the court found that "a § 1271(c) 'agent' includes that person charged with the responsibility for protecting society and the environment from the adverse effects of the surface coal mining operation and particularly charged with effectuating compliance with environmental performance standards during the course of a permittee's mining operation." *Id.* at 440. After reviewing the facts of the case before it, the court concluded that although the defendant was not an officer, director or shareholder of the corporate permittee, he was its agent because he acted as its spokesman and advisor, he had an interest in the equipment used on the mining site, his guaranty on the corporate promissory note was to be paid through the sale of coal removed from the site, and he had assumed the responsibility of attempting to comply with applicable mining reclamation requirements. *See also United States v. Aiken,* 867 F.2d 965 (6th Cir.1989); *United States v. Peery,* 862 F.2d 567 (1988).

■ "Given the relationship between the SMCRA and KRS Chapter 350, we believe that in the interest of consistency, it is logical and appropriate to adopt the definition of "agent" set forth in *Dix Fork, supra,* for purposes of Kentucky law, and to utilize that definition in determining whether Couch was G & W's agent. The record shows that Couch provided all of the start-up money for G & W, that he paid various project-related bills as they came due, and that he anticipated being reimbursed for his investment out of the proceeds from the sale of coal removed from the site. Moreover, there was evidence adduced that Couch twice requested the fiscal court to approve the proposed project, that he conferred with the property's surface owners concerning those attempts, that he inquired into the ownership of the mineral rights, and that he obtained a "pick up" license from the Department of Mines and Minerals permitting coal to be sold. Further, there was also evidence that Couch visited the project site numerous times before, during and after construction, and that he conferred with state inspectors several times and disputed their decision to classify the project as illegal. Couch, by contrast, claimed that he visited the site merely to monitor his investment, and that he did not operate equipment and was not authorized to make decisions regarding daily operations or personnel.

"In resolving the agency issue below, the court evidently found it significant that Couch never was directly involved in G & W's efforts to comply with surface coal mining regulations or reclamation plans. However, given the fact that Couch and G & W denied that the project involved surface coal mining, and the fact that apparently there was a wholesale failure of anyone to take steps on behalf of G & W to comply with surface coal mining regulations, we conclude that if Couch were excluded from liability as an "agent" herein despite his otherwise extensive involvement on behalf of G & W, such a finding would "subvert the policy of the statutory framework" in which the term "agent" is employed. *Dix Fork, supra* at 440. Therefore, based upon our careful review of the record, we conclude that the evidence was sufficient to establish that Couch's overall involvement in the project clearly required him to assume "responsibility for protecting society and the environment from the adverse effects of the surface coal mining operation," *id.* at 440, and that the secretary did not err by finding that Couch was G & W's agent.

■ "Finally, the cabinet contends that the trial court also erred by finding that the evidence was insufficient to establish that Couch knowingly and willfully ordered, authorized, or carried out surface coal mining violations within the meaning of KRS 350.990(9). Again, we agree.

KRS 350.990(9) states as follows:

When a corporate permittee violates any provision of this chapter or administrative regulation issued pursuant thereto or fails or refuses to comply with any final order issued by the secretary, *any* director, officer, or *agent* of the corporation *who willfully and knowingly authorized, ordered, or carried out the violation, failure, or refusal* shall be subject to the same civil penalties, fines, and imprisonment as may be imposed upon a person pursuant to this section. (Emphasis added.)

The court agreed with Couch's argument that in the absence of evidence to contradict his testimony that he initially believed in good faith that the project was legal, the secretary erred by finding that Couch's alleged violation of KRS Chapter 350 was willful. Further, the court agreed with Couch's assertion that even if his "good faith" terminated once he was advised that the project was illegal, no evidence was adduced to establish that he thereafter willfully and knowingly violated surface coal mining regulations.

"In the first place, we are not persuaded that the issue of Couch's alleged good faith is relevant to the determination of whether he "willfully and knowingly authorized, ordered, or carried out" surface coal mining violations. Certainly, despite Couch's arguments to the contrary, the resolution of the good faith issue in this administrative civil proceeding is not analogous to a determination of intent and culpability in a criminal proceeding. Indeed, it is settled that a showing of evil purpose or criminal intent is not a necessary prerequisite to a determination of statutory liability in a civil proceeding, and that a "willful" statutory violation may occur when the conduct in question is simply " 'marked by careless disregard whether or not one has the right so to act.' " *United States v. Illinois Central R. Co.*, 303 U.S. 239, 58 S.Ct.

533, 535, 82 L.Ed. 773 (1938) (quoting *United States v. Murdock*, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933)). *See also Donovan v. Capital City Excavating Co.*, 712 F.2d 1008 (6th Cir.1983); *United States v. Consolidation Coal Co.*, 504 F.2d 1330 (6th Cir.1974).

"Moreover, we note that the definitions set out in 405 KAR 7:001, relating to KRS Chapter 350, do not include any "good faith" requirement as regards willful or knowing conduct. "Willfully" is defined as meaning

that a person acted either *intentionally, voluntarily, or consciously, and with intentional disregard or plain indifference to legal requirements, in authorizing, ordering, or carrying out an act or omission that constituted a violation* of SMCRA, KRS Chapter 350, 405 KAR Chapters 7 through 24, or a permit condition, or that [the act or omission] constituted a failure or refusal to comply with an order issued pursuant to SMCRA, KRS Chapter 350, or 405 KAR Chapters 7 through 24. (Emphasis added.)

405 KAR 7:001(89). "Knowingly" is defined as meaning

that a person *knew or had reason to know in authorizing, ordering, or carrying out an act or omission that the act or omission constituted a violation* of SMCRA, KRS Chapter 350, 405 KAR Chapters 7 through 24, or a permit condition, or that the act or omission constituted a failure or refusal to comply with an order issued pursuant to SMCRA, KRS Chapter 350, or 405 KAR Chapters 7 through 24. (Emphasis added.)

405 KAR 7:001(45).

"Further, even if we agreed with Couch's "good faith" argument, we could not agree with his claim that the evidence adduced was insufficient to establish that after he learned the project was illegal, he "willfully and knowingly authorized, ordered, or carried out surface coal mining violations." Indeed, the record shows that Couch was highly involved in many aspects of the project, ranging from paying all expenses, to conferring with property owners and securing approval of the fiscal court for the project, to obtaining the

necessary license for selling the coal, to conferring with mining inspectors. Moreover, the record also shows and the hearing officer found that on July 29, 1983, Couch was advised by a mining inspector that the project was illegal and that coal should not be removed from the site. Nevertheless, coal continued to be uncovered and removed. On August 8, notices of noncompliance and a cessation order were issued, and copies were delivered to G & W's president. However, not only did the mining operation continue, but in fact numerous truckloads of coal were hauled from the site between dusk on the evening of August 8 and early the next morning. Given the evidence as a whole regarding Couch's participation in the foregoing events, we cannot say that the secretary erred by concluding that Couch willfully and knowingly authorized, ordered or carried out G & W's violation of surface coal mining regulations. It follows, therefore, that the court erred by reversing the secretary's finding in this vein.

"The court's judgment is reversed and remanded for further proceedings consistent with the views expressed in this proceedings.

All concur."

All concur. All sitting.